(No. 2067—

WISCONSIN BRIDGE & IRON Co., A CORPORATION, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 12, 1935.*

LAFROM, TIGHE, ENGELHARD & PECK, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

This claim as originally filed on February 7, 1933, contained two items of damages alleged to have been occasioned by the respondent in connection with a bridge contract awarded to claimant on S. B. I. No. 121 over the Illinois River near Pekin, Illinois.

The first item of the claim, as stated in plaintiff's Bill of Particulars is as follows:

Labor and expense of shop crew, storing and rehandling structural steel work for the approach to the Cedar Street Bridge at Peoria, Route No. 121, Sec. 103C, due to J. L. Simmons Company's inability to complete the substructure in accordance with their proposed schedules. $4,052.00

The second item of plaintiff's claim grew out of labor troubles experienced by plaintiff and includes—

Insurance, deputy sheriff fees, taxes, flood lights, guards, labor, additional equipment, attorney fees and court costs incident to injunction proceedings in a total of..........$10,007.97

An amended declaration was filed on December 27, 1933 which includes the two foregoing items and an additional item for an extra allowance on steel and iron used in the bridge, in addition to the weights as previously determined by the State Engineers to the amount of........$ 3,393.70 making a total claim by plaintiff herein of........ 17,453.67. As to its first cause of action claimant contends that upon the contract being awarded to it for the bridge in question, a letter was written to it by the Division of Highways, Department of Public Works and Buildings which stated—

"This contract is awarded to you upon condition that you will start work on this section immediately and will prosecute the work as outlined in the special provisions included in your proposal."

Claimant contends that immediately thereafter representatives of the Highway Department met with claimant and agreed upon a Schedule of Progress for the construction of the work covered by the contract; that it was agreed that the substructure for the bridge that was being built by other parties would be ready so that claimant could begin its operations for erecting the superstructure on April 1, 1932; that claimant was prevented from shipping its material in accordance with the Progress Schedule because the bridge site was being used by the substructure contractor. Claimant contends that it was necessary by reason of the delay in substructure work, for it to store and rehandle its fabricated material; that the cost of work, unless otherwise designated in the specifications, is figured on the basis of fabrication and immediate shipment, and that this is the basis upon which claimant figured on this job (Plaintiff's Brief, P. 4).

The respondent contends that the report of the Highway Department states that it is common practice for the structural steel to be fabricated early and remain in storage either in plant or at the bridge site until the workmen are ready for same; that the specifications permit payment for steel in

storage pending erection and that such provision for payment was actually taken advantage of by the plaintiff in the amount of $65,457.67 paid May 13, 1932—$11,653.91 paid June 28, 1932 —and $18,316.78 paid July 22, 1932, all for steel in storage.

Plaintiff's claim must be determined by the conditions and provisions stated in the contract. Claimant concedes that its contract did not require it to begin work specifically on April 1, 1932, and that there was no guarantee that work could be started on that date. Claimant knew when it received the letter of award, dated December 1, 1931, stating that "This contract is awarded to you upon condition that you will start work on this section immediately, etc.," that the substructure work had to be advanced to certain stages before the actual superstructure construction could take place. The estimate of time made by plaintiff for the fabrication of its steel work was a matter for its own judgment and the fact that the State advanced the claimant a total of $65,457.67 in May, 1932—$11,653.91 in June, 1932—and $18,316.78 in July, 1932, under a section of the specifications (96) indicates that storage and rehandling of structural steel was anticipated at the time the contract was made, and that plaintiff took full advantage of its opoprtunity to obtain such advance payment.

No legal ground existing for an award for *item one* of plaintiff's claim, an award therefor is denied.

PLAINTIFF'S SECOND CAUSE OF ACTION, i. e.—Claim for special items of expense arising by reason of labor troubles in connection with the performance of the contract in question carries with it no legal basis upon which an award could be predicated. Claimant contends that because the Governor of Illinois did not order out a military force to protect the claimant in its work, that the State should be liable for any expense to which claimant was put in hiring armed guards or any additional expenses to which it was put. The Statutes of Illinois provide for a specific liability upon the part of cities in case of strikes and riots, but there is no Statute fixing any legal liability against the State in such matters. In the absence of any such legal liability this court cannot justify an award. Another portion of this item of plaintiff's claim is based upon an understanding which it had that it could place a derrick on the portion of the bridge owned by the City of Peoria, but that at some stage of the construction work it was

ordered by the City of Peoria to remove its derrick from the Peoria side of the bridge and as a result additional truck expense was incurred in handling its material. Under no process of legal reasoning can the State be held responsible for the action of the officials of the City of Peoria. Any award to claimant under *item two* is hereby denied.

PLAINTIFF'S THIRD CLAIM results from a controversy over the method of computing the weights of structural steel, iron and steel castings. It is agreed that the method of determining the weight is not by actual weighing, but such weight is computed according to certain methods of measurements existing in the steel and construction industry. The contract in question was awarded under "Standard Specifications for Road and Bridge Construction" adopted by the Highway Department of Illinois on February 1, 1930. Section 44.4 thereof contains the following:

"The weight paid for shall be the weight given in the contract, or revised by authority of the engineer."

Claimant cites *Section 39.19, Method of Measurement,* which provides:

"The quantities of the various items which constitute the completed and accepted structure will be measured for payment according to the plans and specifications for the several pay items."

Also, *Section 39.20 Basis of Payment:*

"The quantities, measured as provided herein, will be paid for at the contract unit prices for the several pay items constituting the structure and listed in the proposal, which price shall be payment in full for all foundation and substructure work, removal of existing structures, furnishing, preparing, fabricating, transporting, placing, and erecting all materials for the complete structure, for all shop work, painting, and field work, for all labor, equipment, tools, and incidentals, necessary to complete the work as required herein."

Claimant contends that under the specifications and contract, the computed weight for which it was to be paid should have allowed variation for overrun on plates over thirty-six inches in width and on iron or steel castings, and for weight of paint. The method of payment used by the Division of Highways is based on nominal weights without allowance for overrun or weight of paint, and has been used by that Depart-

ment for the past twenty years. The record shows that eleven states out of a total of twenty-five are using the same method as Illinois. Claimant in its introduction of evidence and in its argument refers to other methods of determining weights and refers specifically to the rules of the American Society for Testing Materials, and the American Institute of Steel Construction, Inc.

Claimant submits (Brief p. 21). The sole question presented in claimant's *third cause* is whether or not the methods used by respondent in computing the weights upon which claimant was paid is in accordance with well recognized engineering practice. *Section 9.1* of the *standard specifications* seems, by its general wording, to refer to roadway rather than bridge construction, but if it may be said to pertain also to the latter, then the wording "actual quantities of work * * * shall be measured by the engineer * * * in accordance with well recognized engineering practice" when considered with Section 44.4 of the Specifications gives to the State Engineer discretion in the method and manner of computing the weights of steel and iron. Apparently the State Engineer in this instance followed a rule which had up to that time received approval in many States and one that has been followed in Illinois for twenty years. The fact that the steel manufacturing industry had adopted a different rule, or even that the State of Illinois since that time has changed its rule, would not affect the engineer's right at the time stated, to follow the rule which he did. The Constitution of Illinois provides as follows:

"The General Assembly shall never grant or authorize extra compensation, fee or allowance to any * * * contract or after service has been rendered or a contract made, nor authorize the payment of any claim or part thereof hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

Sec. 19, Art. IV Constitution of Illinois.

An award for *item 3* is also denied, and plaintiff's claim is hereby dismissed.